**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

--------------------------------------------------------

SHIVA STEIN,                                          :
                                                      :
                        Plaintiff,                    :     Civil Action No. _____
                                                      :
v.                                                    :
                                                      :     **COMPLAINT FOR VIOLATIONS OF**
TC PIPELINES, LP, STANLEY GRAHAM                      :     **SECTIONS 14(a) AND 20(a) OF THE**
CHAPMAN, III, NATHAN BROWN,                           :     **SECURITIES EXCHANGE ACT OF**
NADINE E. BERGE, JACK STARK,                          :     **1934**
MALYN K. MALQUIST, PEGGY A. HEEG,                     :
GLORIA HARTL, and TC PIPELINES GP,                    :     **JURY TRIAL DEMANDED**
INC.,                                                 :
                                                      :
                        Defendants.                   :
--------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against TC PipeLines, LP ("TC PipeLines" or

the "Partnership"), the members of TC PipeLines' board of directors (the "Board" or the

"Individual Defendants"), and TC PipeLines GP, Inc. (the "General Partner" and collectively with

the Individual Defendants and the Partnership, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with

the proposed acquisition of TC PipeLines by TC Energy Corporation ("TC Energy") and TC

Energy's affiliates.

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the

"Proxy Statement") to be filed on January 26, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to the Partnership's unitholders. The Proxy Statement recommends that the Partnership's unitholders vote in favor of a proposed transaction whereby TCP Merger Sub, LLC ("Merger Sub") will merge with and into TC PipeLines, with TC PipeLines surviving the merger and becoming an indirect, wholly-owned subsidiary of TC Energy (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each TC PipeLines common unit issued and outstanding will be converted into the right to receive 0.70 shares of TC Energy common stock for each common unit of TC PipeLines owned (the "Merger Consideration").

3. As discussed below, Defendants have asked TC PipeLines' unitholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Partnership's financial forecasts and financial analyses conducted by the financial advisor of the Partnership, Evercore Group L.L.C. ("Evercore"), in support of its fairness opinion, and relied upon by the Board in recommending the Partnership's unitholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Partnership's unitholders prior to the forthcoming unitholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TC PipeLines' unitholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because TC PipeLines in incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of TC PipeLines common units and has held such units since prior to the wrongs complained of herein.

10.      Individual Defendant Stanley Graham Chapman, III has served as a member of the Board since 2016 and is the Executive Vice-President and President, U.S. and Mexico Natural Gas Pipelines of TC Energy and Chairman of the General Partner.

11.      Individual Defendant Nathan Brown has served as a member of the Board since 2018 and is the President and a director of the General Partner, and is the Vice President of U.S. Natural Gas Pipelines Financial Services of TC Energy.

12.      Individual Defendant Nadine E. Berge has served as a member of the Board since 2018 and is also the Director of Corporate Compliance and Legal Operations of TC Energy.

13.     Individual Defendant Jack Stark has served as a member of the Board since 2009 and is also a director of the General Partner.

14.     Individual Defendant Malyn K. Malquist has served as a member of the Board since 2011 and is also a director of the General Partner.

15.     Individual Defendant Peggy A. Heeg has served as a member of the Board since 2020 and is also a director of the General Partner.

16.     Individual Defendant Gloria Hartl has served as a member of the Board since 2020 and is also a director of the General Partner and the Vice President of Risk Management of TC Energy.

17.     Defendant TC PipeLines is a Delaware limited partnership and is headquartered in Houston, Texas.  The Partnership's common stock trades on the New York Stock Exchange under the symbol "TCP."

18.     Defendant General Partner is a Delaware corporation and is the general partner of TC PipeLines.

19.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

21.     TC PipeLines acquires, owns, and participates in the management of energy infrastructure businesses in North America.  The Company has interests in eight natural gas interstate pipeline systems that transport approximately 10.9 billion cubic feet per day of natural gas from producing regions and import facilities to market hubs and consuming markets primarily

4

in the Western, Midwestern, and Eastern United States.  It serves large utilities, local distribution companies, natural gas marketers, producing companies, and other interstate pipelines, including affiliates.  TC PipeLines GP, Inc. operates as a general partner of the company.  TC PipeLines was founded in 1998 and is based in Houston, Texas.

22.     On December 15, 2020, TC PipeLines announced that they had entered into a proposed transaction:

> HOUSTON, Dec. 15, 2020 (GLOBE NEWSWIRE) -- TC PipeLines, LP (NYSE: TCP) (TCP or the Partnership) today announced it has entered into a definitive agreement and plan of merger pursuant to which TC Energy Corporation (TSX, NYSE: TRP) (TC Energy) will acquire all the outstanding common units of TCP not beneficially owned by TC Energy or its affiliates in exchange for TC Energy common shares. Pursuant to the agreement, TCP common unitholders would receive 0.70 common shares of TC Energy for each issued and outstanding publicly-held TCP common unit. This represents a 19.5 per cent premium to the TCP closing price before the original offer as of October 2, 2020.

> The conflicts committee, composed of independent directors of the Partnership's general partner, after consultation with its independent legal and financial advisors, unanimously approved the merger agreement and determined it to be in the best interests of the Partnership and its unaffiliated unitholders. Subsequently, the board of directors of the Partnership's general partner approved the merger agreement and determined it to be fair and reasonable and in the best interests of the Partnership.

> The transaction is expected to close late in the first quarter or early in the second quarter of 2021 subject to the approval by the holders of a majority of outstanding common units of TCP and customary regulatory approvals. Upon closing, TCP will be wholly-owned by TC Energy and will cease to be a publicly-held master limited partnership.

> The exchange ratio reflects a value for all the publicly-held common units of TCP of approximately US$1.68 billion, or 38 million TC Energy common shares based on the closing price of TC Energy's common shares on the New York Stock Exchange on December 14, 2020.

> Evercore is acting as exclusive financial advisor and Kirkland & Ellis LLP is acting as legal advisor to the conflicts committee.

23.     The Board has unanimously approved the Proposed Transaction.  It is therefore imperative that TC PipeLines' unitholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

24.     On January 26. 2021, TC PipeLines filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Partnership's unitholders and solicits the unitholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Partnership's unitholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Partnership's unitholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning TC PipeLines Financial Projections*

25.     The Proxy Statement fails to provide material information concerning financial projections prepared by TC PipeLines management and relied upon by Evercore in its analysis. The Proxy Statement discloses management-prepared financial projections for the Partnership which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Partnership prepared certain non-public financial forecasts (the "Partnership Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Partnership.  Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that TC PipeLines management provided to the Board and the financial advisor. Courts have uniformly

stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     With respect to the TC PipeLines Prospective Financial Information, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Comparable EBITDA and Comparable FGFO, but fails to provide line items used to calculate these metric and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     With respect to the TC Energy Unaudited Prospective Financial Information, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Comparable EBITDA and Comparable FGFO, but fails to provide line items used to calculate these metric and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that unitholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

31.     With respect to Evercore's *Discounted Cash Flow Analysis* for TC PipeLines, the Proxy Statement fails to disclose: (i) the terminal values calculated for the Partnership; (ii) the inputs and assumptions underlying the use of the range of discount rates ranging from 5.5% to 6.5%; (iii) the inputs and assumptions underlying the use of the range of EBITDA exit multiples of 8.5x to 10.5x; (iv) the inputs and assumptions underlying the use of the perpetuity growth rates ranging from (0.25%) to 0.25%; and (v) the cash flows received by TC PipeLines based on the TCP Financial Projections.

32.     With respect to Evercore's *Discounted Distributions Analysis* for TC PipeLines, the Proxy Statement fails to disclose: (i) the future cash distributions to holders of TC PipeLines common units; (ii) the inputs and assumptions underlying the use of the range of terminal yield range from 7.5% to 10.5%; and (iii) the inputs and assumptions underlying the use of cost of equity

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

of 7.5% to 8.5% based on CAPM and a cost of equity of 9.0% to 11.0% based on total expected market return for master limited partnerships and corporations.

33.    With respect to Evercore's *Peer Group Trading Analysis* for the Partnership, the Proxy Statement fails to disclose: (i) the individual multiples and metrics of each company or partnership observed by Evercore in the analysis; (ii) net debt of the Partnership; and (iii) Class B units and units outstanding as of December 31, 2020.

34.    With respect to Evercore's *Precedent M&A Transactions Analysis* for the Partnership, the Proxy Statement fails to disclose: (i) the individual multiples and metrics of each transaction observed by Evercore in the analysis; (ii) net debt of the Partnership; and (iii) Class B units and units outstanding as of December 31, 2020.

35.    With respect to Evercore's *Discounted Dividends Analysis* for TC Energy, the Proxy Statement fails to disclose: (i) the future cash dividends to holders of TC Energy common shares; (ii) the inputs and assumptions underlying the use of the range of terminal yield range from 4.5% to 6.5%; and (iii) the inputs and assumptions underlying the use of cost of equity of 8.0% to 9.0% based on CAPM and a cost of equity of 9.0% to 11.0% based on total expected market return for publicly traded companies owning assets similar to those owned by TC Energy.

36.    With respect to Evercore's *Peer Group Trading Analysis* for TC Energy, the Proxy Statement fails to disclose: (i) the individual multiples and metrics of each company or partnership observed by Evercore in the analysis; (ii) net debt of TC Energy; (iii) preferred equity and non-controlling interest as of December 31, 2020; and (iv) common shares outstanding as of December 31, 2020.

37.    In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

Absent disclosure of the foregoing material information prior to the special unitholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Proxy Statement with the intention of soliciting unitholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Evercore and relied upon by the Board in recommending the Partnership's unitholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

10

to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

42.    Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Partnership's financial projections.

43.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.    The Individual Defendants acted as controlling persons of TC PipeLines within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

directors of TC PipeLines, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of TC PipeLines, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of TC PipeLines, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 5, 2021                    **RIGRODSKY LAW, P.A.**

                                    By:    */s/ Gina M. Serra*
                                    _____
**OF COUNSEL:**                            Seth D. Rigrodsky (#3147)
                                           Gina M. Serra (#5387)
**WOLF HALDENSTEIN ADLER**                 300 Delaware Avenue, Suite 210
**FREEMAN & HERZ LLP**                     Wilmington, DE 19801
Gloria Kui Melwani                         Telephone: (302) 295-5310
270 Madison Avenue                         Facsimile: (302) 654-7530
New York, NY 10016                         Email: sdr@rl-legal.com
Telephone: (212) 545-4600                  Email: gms@rl-legal.com
Facsimile: (212) 686-0114
Email: melwani@whafh.com                   *Attorneys for Plaintiff*

14